88

# CIRCUIT COURT OF LOUDOUN COUNTY

Raymond Eugene Blankenship, Jr.

v.

Dana Lynn Blankenship

August 26, 2003

Case No. (Chancery) 20364

BY JUDGE JAMES H. CHAMBLIN

This cause came before the Court on August 8, 2003, for hearing on the following:

1. Motion for Modification of Spousal Support filed April 14, 2003, by the Complainant, Raymond Eugene Blankenship, Jr. (Husband or Father).

2. Motion for Sanctions (including a motion for reduction of child support) filed April 14, 2003, by the Husband.

3. Supplemental Grounds for Modification of Child Support filed July 9, 2003, by the Husband.

## I. *Facts*

Husband and the Defendant, Dana Lynn Blankenship, (Mother or Wife) were married on October 21, 1978. They have three children as follows:

| Name | Date of Birth |
|---|---|
| Jason Michael Blankenship | April 30, 1981 |
| Jon Paul Blankenship | April 12, 1984 |
| Raymond Eugene Blankenship | November 23, 1988 |

The parties separated on July 23, 1999. The parties executed a Separation and Property Settlement Agreement dated July 7, 2001 (the Agreement), which was incorporated in the Final Decree of Divorce entered July 9, 2001. Under the Agreement and the Final Decree, Father agreed to pay child support for their three children (the parties agreed that they had a continuing duty to support Jason because of his physical and mental condition despite his having reached the age of majority) in the amount of $1,083.00 per month.

When the final decree was entered the Husband had a gross monthly income of $7,309.00 (he was employed as a Fire/EMS Battalion Chief for Arlington County), and Wife had a gross monthly income of $1,338.00 (she was employed as a teacher's aide by Loudoun County Public Schools). Based upon these incomes and the receipt of social security disability payments for Jason (which could have been as much as $500.00 per month) the parties agreed on spousal support of $1,500.00 per month and the aforesaid child support of $1,083.00 per month.

On June 20, 2002, Father filed a Motion for Modification of Child Support because (1) Jon Paul had attained the age of eighteen years and graduated from high school and (2) Mother's income was greater than that used to calculate child support as part of the Final Decree of Divorce.

After the Father filed his motion in June 2002, the parties exchanged financial information through counsel. On August 15, 2002, the parties reached an agreement based in part on the information provided by Mother's counsel that she was still employed by Loudoun County Public Schools (LCPS) and making $18,288.00 per year or $1,524.00 per month gross. The agreement provided that Father's child support obligation would be modified to $787.00 per month for two children (Jason and Raymond) commencing June 15, 2002. Counsel for Father prepared a consent decree embodying the agreement. The consent decree was endorsed by counsel for the Mother on August 27, 2002, and was entered by this Court on September 4, 2002.

Paragraph 3(d) on page 4 of the consent decree states that Mother is employed by LCPS.

Later in September 2002, Father learned that Mother was no longer employed by LCPS. In October 2002, Mother finally admitted to Father that she was working for the Central Intelligence Agency (CIA). Father later learned more about her new employment, including her new income.

While the parties were negotiating and reaching their agreement of August 15, 2002, as embodied in the consent decree entered September 4, 2002, Mother never revealed the following facts to Father or his counsel.

1. By letter dated November 13, 2001, Mother was offered a job by the CIA as a secretary with an annual salary of $39,935.00. See Complainant's Exhibit 22.

2. On July 23, 2002, Mother submitted her letter of resignation to LCPS effective August 7, 2002. See Complainant's Exhibit 15. However, she continued to work for LCPS through August 17, 2002, to finish summer school.

3. By letter dated July 24, 2002, the CIA acknowledged that Mother had accepted a position as a secretary with an annual salary of $41,842.00. See Complainant's Exhibit 23.

4. Mother left LCPS on August 17, 2002, and began work with the CIA on August 19, 2002. She began CIA orientation on August 19, 2002, and was paid for the orientation when she received her first paycheck on September 19, 2002. See Defendant's Exhibit 5.

5. Mother's Earnings and Leave Statement for the pay date of September 19, 2002, shows that her rate of pay was $20.05 per hour which corresponds to an annual pay of $41,704.00 (52 weeks, 40 hours per week), or $23,416.00 more than what she was making annually with LCPS. It represents a 128% increase in her income.

Father tried to reach an agreement with Mother to modify support based on her new income with the CIA. He was unsuccessful. He contacted counsel. In April 2003, he filed his two motions for modification of support and for sanctions supplemented by the additional grounds for modification of child support filed in July 2003.

The agreement reached in August 2002 for modification of child support was based on the following.

1. The parties agreed that Father had a monthly gross income of $7,500.00 per month, and that Mother had a monthly gross income of $1,524.00. They also agreed that Father paid $116.00 per month for medical insurance for the two children. They continued to agree that they had a duty to support Jason because of his physical and mental condition.

2. Because Jason was receiving social security disability, the parties agreed that the child support would be the total of the guideline child support for one child and for two children divided by two, as follows:

> Guideline child support for one child: $607.00
> (Complainant's Exhibit 12)
> Guideline child support for two children: $966.00
> (Complainant's Exhibit 13)
> Total: $1,573.00
> Divided by 2, equals: $786.50

The parties rounded the child support to $787.00 per month effective June 15, 2002.

As of the hearing, Father continues to be employed by Arlington County as an EMS/Fire Battalion Chief, and Mother continues to be employed by the CIA as a secretary.

Father's job includes overtime. Through June 28, 2003, he made $56,534.21, including overtime, as a battalion chief. This would correspond to annual income of $113,068.42. Father admits to other income of $150.00 per month from mowing and CPR instruction. He claims a $50.00 per month payment toward a mower. He also owns a condominium which he rents to his sister for $925.00 per month with monthly expenses for it of $696.00 for the mortgages, $25.00 for insurance, $50.00 for repairs, and $142.00 in homeowner's association dues, leaving a net of $12.00 per month. See Complainant's Exhibit 10. Father testified that he expects he will make $100,000.00 to $105,000.00 in 2003. The child support guideline worksheet tendered by his counsel shows a monthly gross income of $8,773.00, or $105,276.00 per year.

After consideration of all the evidence, I find that Father has an annual income from all sources of $108,000.00, or $9,000.00 gross per month.

Mother is paid every two weeks. Her latest Earnings and Leave Statement (Defendant's Exhibit 5) shows that through May 31, 2003, or for twelve two-week pay periods, she has earned $20,679.62, or an average of $1,723.30 (including overtime) per pay period. At $1,723.30 per pay period, Mother would earn $44,805.80 for twenty-six pay periods for the year, or $3,733.81 per month.

I find from all the evidence, Mother has an annual income of $44,805.80, or $3,734.00 (rounded) gross per month.

Father pays $113.00 per month for medical insurance for the children.

In August 2002, Jason received social security disability payments and had some other income from a job. The evidence was not clear on exactly what Jason was receiving, but the parties stipulated that Jason's social security disability payments had decreased from $505.63 to zero at the time of the hearing. Currently, Jason is employed full time making $8.00 per hour. Complainant's Exhibit 7. Mother's evidence was conflicting as to how much Jason was working. She testified that Jason started work on July 2, 2003, worked the first week making about $200.00, missed the second week for health reasons, and worked the next week making about $242.00. However, two pay stubs offered into evidence (Complainant's Exhibit 7) show that Jason worked 31.6 hours during the week ending July 4, 2003, making

$252.00 gross and $201.68 net, and that he worked 42.8 hours during the week ending July 11, 2003, making $336.80 gross and $263.02 net.

## II. *Motions*

The motion filed by Husband on April 14, 2003, styled "Motion for Sanctions" requests the following relief:

a. An order vacating the consent decree entered September 4, 2002, for fraud on the Court committed by Wife.

b. A reduction in child support from the $1,083.00 per month as provided in the final decree entered July 9, 2001, retroactive to June 19, 2002 (the date Husband asserts he filed his prior motion for modification of child support; actually it was filed June 20, 2002).

c. An order assessing the following sanctions against Wife and/or her counsel:

(1) Reasonable attorney's fees for the prior motion to modify child support;

(2) Reasonable attorney's fees for the Motion for Sanctions.

In final argument, counsel for Husband argued for sanctions under Va. Code § 8.01-271.1 against Wife and/or her counsel in the form of an award of attorney's fees. There was no argument for vacating the consent decree or a modification being retroactive to June 20, 2002 (a date earlier than the date of April 14, 2003, when the Motion for Sanctions was filed).

I am treating the Motions for Sanctions as it was argued by counsel, *i.e.*, having two components as follows:

(1) A motion for sanctions in the form of an award of attorney's fees for an alleged violation of Va. Code § 8.01-271.1 when Wife's counsel endorsed the consent decree; and

(2) A motion for reduction in child support because of the increase in Wife's income and Jason's recent employment. The latter ground is as set forth in the "Supplemental Grounds for Modification of Child Support" filed July 9, 2003.

The first is addressed below under "Motion for Sanctions," and the second is addressed below under "Modification of Child Support."

## A. *Motion for Sanctions*

Husband asks the Court to impose sanctions upon Wife and/or her counsel under Va. Code § 8.01-271.1. Va. Code § 8.01-271.1 provides:

The signature of an attorney or party constitutes a certificate by him that (i) he has read the pleading, motion, or other paper, (ii) to the best of his knowledge, information and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and (iii) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . .

If a pleading, motion, or other paper is signed or made in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed the paper or made the motion, a represented party, or both, an appropriate sanction, which may include an order to pay the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper or making of the motion, including a reasonable attorney's fee.

Husband alleges that the violation occurred when, on August 27, 2002, Wife's counsel endorsed the consent decree, which recited that Wife was employed by LCPS, when, in fact, she was employed on August 27, 2002, by the CIA. He argues that reasonable inquiry by Wife's counsel on August 27, 2002, would have revealed that the consent decree was not well grounded in fact. Further, Husband argues that the Wife committed a fraud on this Court by her failure to reveal her true employment and income status before the consent decree was entered.

As reprehensible as the actions of the Wife might have been in not disclosing her plans to change employment during the child support modification negotiations in August 2002, I do not think that there has been a violation of Va. Code § 8.01-271.1 or a fraud committed on the Court.

Counsel's endorsement of a consent decree which contains factual recitations is the "signature of an attorney" constituting a certificate that to the best of that attorney's knowledge, information, and belief, formed after reasonable inquiry, the factual recitations are "well grounded." Therefore, Va. Code § 8.01-271.1 does come into play when an attorney endorses a consent decree. But Va. Code § 8.01-271.1 is aimed at the attorney (or a *pro se* party) who signs the pleading or "other paper" such as a consent decree.

I must examine the conduct of Wife's counsel as disclosed by the evidence. There is absolutely no evidence that Wife's counsel knew that Wife had accepted the CIA job at the increased salary when he endorsed the consent decree. There is no evidence that Wife's counsel might have had reason to

believe that Wife was even looking for new employment. The evidence is that Wife's counsel on August 15, 2002, forwarded to Husband's counsel Wife's recent pay statement from LCPS for the periods ending June 15 and 30, 2002, and July 15, 2002. See Defendant's Exhibit 3. This information was accurate. On August 15, 2002, Wife was still employed by LCPS.

A fair inference from the evidence is that when Wife's counsel endorsed the consent decree on August 27, 2002, he had no reason to believe that Wife was employed anywhere other than by LCPS. The parties through counsel had negotiated an agreement on August 15, 2002, when Wife was, in fact, employed by LCPS. I do not think that it is reasonable to require Wife's counsel, when only twelve days later he was about to endorse the consent decree embodying the agreement, to inquire as to Wife's continued employment with LCPS unless her counsel had some other reason to inquire. There is no evidence of such other reason.

Husband seems to want to impute Wife's failure to reveal her new employment and increase in salary to her counsel. Va. Code § 8.01-271.1 is, in my opinion, aimed at the attorney or *pro se* litigant who signs a pleading or other paper. The statute does not give the opposing party a remedy merely because a party fails to reveal something to his counsel unless there is some reason for counsel to make an inquiry. No such reason is presented here. Counsel is not charged with knowing everything that his client knows.

Based on the evidence presented, I cannot find that Wife's counsel violated Va. Code § 8.01-271.1. Also, I cannot find that Wife violated the statute because it is aimed at the attorney, not the party represented by the attorney, unless the evidence shows that the party participated in the violations as well as the attorney.

The actions of the Wife in failing to reveal her new employment and her counsel's endorsement of the consent decree do not constitute a fraud upon this Court or extrinsic fraud. The consent decree is final. Therefore, it cannot be attacked unless it can be shown that it was procured by extrinsic fraud. A judgment procured by extrinsic fraud, *i.e.*, conduct which prevents a fair submission of the controversy to the court, is void and subject to collateral attack at any time. *Jones v. Willard*, 224 Va. 602 (1983). Here there was no submission of the controversy to the Court. The parties agreed. There was nothing for the Court to decide.

If the matter had been tried by the Court in September 2002 (instead of entering a consent decree) and Wife had failed to reveal her new employment, at most she would possibly have been guilty of perjury. Perjury constitutes intrinsic fraud. A judgment procured by intrinsic fraud is voidable, *i.e.*, subject

only to direct attack until the judgment becomes final. Here the consent decree became final twenty-one days after it was entered on September 4, 2002.

For the foregoing reasons, the Motion for Sanctions is denied.

### B. *Modification of Spousal Support*

Under the Agreement incorporated into the final decree of divorce entered July 7, 2001, Husband agrees to pay Wife the sum of $1,500.00 per month in spousal support. Paragraph 4 of the Agreement provides that spousal support "may be modified by a court of competent jurisdiction upon a showing of a change in circumstances."

In his Motion for Modification of Spousal Support filed April 14, 2003, Husband alleges as grounds for the modification that Wife has changed employment since entry of the final decree on July 9, 2001, and that her "income is significantly greater than that used to calculate child [sic] support as part of the Final Decree."

When the final decree of divorce was entered in July 2001, Husband had a gross income of $7,309.00 per month, and Wife had a gross income of $1,338.00 per month. Based on these incomes and Jason's receiving approximately $500.00 per month in social security disability payments, the parties agreed upon $1,500.00 per month in spousal support.

There has been a change in circumstances. Now Husband has a monthly gross income of $9,000.00 and Wife has a monthly gross income of $3,734.00. Jason is now employed and nets over $200.00 per week when he works. If he misses a week per month, he would still net at least $660.00 per month. His social security disability payments have ceased. Jason currently receives more money now from his employment than was received in 2001 for social security disability payments. Wife takes Jason's pay, deposits it to a joint account, and uses it for his expenses. The parties' incomes and the income to Jason have all increased.

Both parties presented evidence of their current expenses. See Complainant's Exhibit 10 and Defendant's Exhibit 2. Not unexpectedly, both are running a deficit. No evidence was presented to compare their current expenses with their expenses in July 2001 when the Agreement was executed and the final decree entered.

This is a modification of spousal support under Va. Code § 20-109. It is not an initial setting of spousal support; therefore, the Court does not have to consider the statutory factors of Va. Code § 20-107.1. *See Allison v. Allison*, No. 1516-95-4 (Court of Appeals April 16, 1996). Va. Code § 20-109 provides that the Court may modify spousal support "as the circumstances

may make proper." The standard is a material change in circumstances justifying an alteration of the amount of spousal support.

Husband seeks a modification because Wife's income has increased. It certainly has. Her gross income has increased from $1,338.00 per month in July 2001 to $3,734.00 per month, or an increase of over 179%. This is certainly a material change in circumstances.

In July 2001, Wife agreed to accept $1,500.00 per month in spousal support. As a result, she was receiving the following income per month from all sources:

| | |
|---|---|
| LCPS Income | $1,338.00 |
| Spousal Support | $1,500.00 |
| Child Support | $1,083.00 |
| Total | $3,921.00 |

Additionally, Wife had the benefit of approximately $500.00 per month in financial assistance for Jason, for a total monthly income/benefits of $4,421.00.

In July 2001, Wife agreed that she met her needs and the children's needs on $4,421.00 per month.

In August 2002, Wife agreed to a reduction in child support when she represented her monthly income from all sources to be as follows:

| | |
|---|---|
| LCPS Income | $1,524.00 |
| Spousal Support | $1,500.00 |
| Modified Child Support | $787.00 |
| Total | $ 3,811.00 |

With additional financial assistance of $500.00 per month for Jason, she had a total monthly income/benefit of $4,311.00. Therefore, in August 2002, Wife agreed that she could meet her needs and the children's needs on $4,311.00 per month.

Currently, Wife earns $3,734.00 per month. With approximately $660.00 net earnings per month by Jason, Wife has the benefit of approximately $4,394.00 per month. This amount exceeds the amount per month that Wife agreed she needed in August 2002 without considering the receipt of any child support.

Based upon what Wife represented that she needed to meet the required needs in July 2001 and August 2002, she can adequately meet these needs

with her current income, Jason's current income, and child support. There is no need for spousal support.

Husband's spousal support obligation is terminated retroactive to April 15, 2003, the first date on which a payment was due after he filed his motion. I recognize that Jason did not become employed full time until July 2003. However, the child support payable as set forth below from April 2003 plus Wife's income clearly exceeded her needs as represented and agreed to by her in July 2001 and August 2002.

Husband's last spousal support installment was the $750.00 installment due April 1, 2003. Wife is ordered to refund to Husband all installments paid on or after April 15, 2003, unless the parties agree otherwise.

## C. *Modification of Child Support*

As referred to above, as part of the Motion for Sanctions, Husband asks for a modification of child support based upon Wife's increased income. In a supplemental filing, he asks for a modification because Jason has obtained full time employment.

The present child support is $787.00 per month for Jason and Raymond under the consent decree entered September 4, 2002.

Because Wife was receiving financial assistance for Jason in August 2002, the parties agreed that the child support should be the average of the guideline support for two children and for one child. They continued to recognize their duty to support Jason because of his health problems.

Husband no longer wants to pay child support for Jason because he has full time employment. In the Agreement, the parties recognized a continuing duty to support Jason even though he had attained the age of majority because of his physical and mental condition. They did not condition the obligation on Jason's ability to earn an income. No evidence was presented that Jason's condition has changed so as to alleviate the parties' duty to support him. Therefore, I find that the parties still owe a duty of support for Jason.

Jason's income can certainly be considered in setting the amount of support. The parties have shown a history of calculating child support using the guideline average between one and two children. I think it is proper to continue to use this method to calculate child support.

Wife's increased income is certainly a change in circumstances.

The presumptive amount of child support for two children is $1,180.00 per month as shown on the attached child support guideline worksheet. The guideline amount of child support for one child is $744.00 per month. (See attached child support guideline worksheet.) However, I deviate downward

from $1,180.00 per month to $962.00 per month, the average of guideline support for two children and for one child, payable in installments of $481.00 on the 1st and 15th of each month commencing April 15, 2003, the first installment date after the motion was filed on April 15, 2003.

This modification will create an arrearage of $87.50 for each installment ($481.00 minus $393.50) previously paid by Husband under the consent decree. Husband is ordered to curtail the arrearage in full on or before October 1, 2003, unless the parties agree otherwise.